UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| EDWYNA W. BROOKS D/B/A | ) |
| EW BROOKS BROOKS LLC | ) |
|        Plaintiff | ) Action No. |
| v. | ) |
| | ) |
| DAMON ANTHONY DASH and | ) COMPLAINT |
| POPPINGTON LLC d/b/a DAMON | ) |
| DASH STUDIOS | ) |
|        Defendants | ) |

_____)

## JURISDICTION

1.     Jurisdiction is based on diversity of citizenship and federal question. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).

## PARTIES

2.     Edwyna Brooks d/b/a EW Brooks Brooks LLC ("Brooks") is an author from North Carolina with a last address of 211 Livingston Street, Norwood, NC 28128 and lived in Kentucky in 2015.  She is part of a military family that is presently stationed in South Korea.

3.     Damon Anthony Dash ("Dash") is a California resident and has an address of 33 East Orange Grove, Burbank, CA 91502 and/or 8484 Wilshire Blvd, Suite 850A, Beverly Hills, CA, 90210 and/or 13547 Ventura Blvd., Ste 199, Sherman Oaks, CA 91423. Dash upon information and belief has financial interest in various companies that are active in New York State including Damon Dash Enterprises I LLC (NY DOS ID 3438772), Damon Dash Promotions LLC

(NY DOS ID 3176673) and Damon Dash Music Group LLC (NY DOS ID 3396760).

4.     Poppington LLC d/b/a Damon Dash Studios ("Poppington") is a New York limited liability company, New York DOS ID 4527652.  Dash is the Chief Executive Officer of Poppington and Poppington has an address of 13547 Ventura Blvd, Ste 199, Sherman Oaks, CA 91423.

## FACTS

5.     Brooks is the author of "Mafietta" a four-part book series based on aspiring female crime boss. Brooks' goal when writing the book series was to have it turned into a film and/or television series. The books have been copyrighted. See Exhibit A.  U.S. Copyright Registration Number TX-931-981. The books appear for sale at amazon.com. https://www.amazon.com/Mafietta-Rise-Female-Boss/dp/0692410406.

6.     Brooks filmed a version of Mafietta in 2014 with director, Jahmar Hill and the short film gained some recognition/attention.

7.     Then in 2015, Dash was in Albemarle, North Carolina – a small town with a population of close to 16,000 people. Brooks lived in North Carolina in 2015. Brooks attended the Poppington seminar that was being held at that time in North Carolina and paid the fifty-dollar ($50.00) fee to attend the seminar.

8.     Brooks attended the Poppington seminar at an old heating and air-conditioning building in mid-July 2015.  Brooks informed the Defendants as to status of Mafietta.  The Defendants were informed that Brooks had the funding and needed "mentorship and a co-

sign" to get the product in the right hands. At the Poppington seminar, Dash informed Brooks that he wanted to direct the film Mafietta.

9.      The next week, Dash called Brooks and the parties began to negotiate a deal. Eventually Brooks paid for the production, cast and crew associated with Mafietta. Damon informed Brooks that she would a make a million dollars by the end of the year on the film.  Dash also informed Brooks that she could use the Jay-Z hit song, "Reasonable Doubt" in the film because Dash owned it.  Later, Brooks learned that Dash did not own the song.

10.      Attorney G. Edwin Rush negotiated for Brooks and Attorney Eric Howard negotiated for Dash on the director's contract for Mafietta.  In 2016, the parties circulated the final agreement which called for Dash to provide services on a "work for hire" basis. See Exhibit B. Eventually Dash, rejected the offer as Dash never signed the contract.  The parties never executed a contract and no contract of any kind was agreed upon by the parties.

11.      Dash's shenanigans began on the first day of filming of which Brooks was absent attending her step-father's funeral. Upon return to the set, Brooks learned that Damon spent 2-3 hours of the day filming a music video for the musical artist "Murda Mook" (who was also acting in the movie), instead of performing services relating to Mafietta. Brooks was furious and Dash and Brooks had a loud, emotional exchange in front of cast and crew members.  Dash insisted that no music video was filmed during the production of Mafietta. Later Brooks would view the footage from the day in question which confirmed that a music video was produced and filmed by Dash.

12.     Eventually Brooks fired Dash for numerous indiscretions and the overall difficulty in working with Dash. Dash was no longer associated with the film as of 2016.

13.     In 2017, Plaintiff learned that the Defendants placed numerous posts of Mafietta on the official Poppington and Dame Dash Studios Instagram pages.  See Exhibit C.

14.     In 2017, the Defendants placed the film Mafietta on Dame Dash Studios subscription-based platform and on iTunes.  See Exhibit D.  Plaintiff subsequently reached out to iTunes for copyright infringement and the video was removed.  See Exhibit E. The correspondence with iTunes and the Defendants indicate that iTunes was advised that, "the Dame Dash Studios team has full copyright to this title and that it was produced by Poppington Inc." which was untrue.

15.     The Defendants have willfully and negligently infringed on Plaintiff's copyright and intellectual property.

16.     The Defendants have destroyed the investment in the film and the marketability of the film which exceeds $75,000.00.

17.     The Defendants are not owners or joint-authors of the Mafietta film.

18.     The Defendants were not authorized to market the film to any entity and destroyed Plaintiff's potential relationship with iTunes by unlawfully streaming the film without Plaintiff's consent.

19.     Plaintiffs have filed for a copyright for the film Mafietta, which is a derivative work of the book series, U.S. Copyright Application No. 7364178241. See Exhibit F.

20.     The IMDB information on the film Mafietta appears at https://www.imdb.com/title/tt5553260/?ref_=nm_flmg_act_1 Exhibit G.

**COUNT I**
**COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 501, 502, 504 and 505**
**BROOKS AGAINST DEFENDANTS**

21.     Plaintiffs repeats and realleges each of the preceding paragraphs 1-20 above.

22.     Plaintiff is the creator of the film and the rightful owner of the copyrighted books and have a pending copyright for the Mafietta film.

23.     Defendants without the consent of Brooks, posted the film on its social media and streamed the film on iTunes for fees.

24.     Defendants have infringed on Brook's exclusive rights under the United States Copyright Act. The film Mafietta is a derivative work of the of Plaintiff's Copyright Registration No.  TX-931-981, for the Mafietta book series. The film Mafietta has a pending U.S. Copyright Application No. 7364178241.

25.     Under the Copyright Act, a derivative work is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a derivative work. See 17 U.S.C. §101.

26.     Plaintiff is the legal owner and author of the film and the Mafietta books series. The Defendants are not the owners or co-authors of the film Mafietta.

27.     Plaintiff seeks to (1) enjoin the activity of the Defendants, (2) statutory damages and (3) Attorney fees relating to Defendants' actions.  Defendants have harmed Brooks in business and have destroyed the value of the film.

## COUNT II- TRADEMARK INFRINGEMENT
## LANHAM TRADEMARK ACT
## BROOKS AGAINST ALL DEFENDANTS

28.     Plaintiff repeats paragraphs 1-27 above.

29.     In addition to the ownership of the Mafietta books and film, Plaintiff is the owner of https://mafietta.com/ a website relating to her 4 book series Mafietta.

30.     Plaintiff is the owner of the unregistered trademark Mafietta which appears on the website, the book series and the film.

31.     Defendants' actions in utilizing the trademark Mafietta, are in violation of Lanham Trademark Act, section 1 et seq. 21 (a) 34, 15 U.S.C.A.  section 1051-1127.

32.     Plaintiff is the legal and equitable order of a mark Mafietta.

33.     Defendants' unlawfully used the trademark Mafietta in the marketing, distribution and promotion of the film Mafietta without Plaintiff's consent.

34.     Defendants have infringed on the mark the Plaintiff owns, and is harming Plaintiff in its business.

35.     Defendants has caused confusion in the marketplace with its infringing activities and unfair business actions. Defendants fail to mention Plaintiff at all in association with the film, despite the fact that the Defendants had no rights to market or distribute the film.

36.     Defendants contend to be the owners of the Mafietta movie which contain Plaintiff's trademark.

37.     The Defendants have harmed the Plaintiff in its business.

## COUNT III- TRADEMARK INFRINGEMENT
## COMMON LAW
## BROOKS AGAINST ALL DEFENDANTS

38.     Plaintiff repeats paragraphs 1-37 above.

39.     The Defendants are infringing on the common law mark Mafietta utilized by the Plaintiff and has harmed Plaintiff's business.

40.     The Defendants have unlawfully streamed the movie containing Plaintiff's trademark without the consent of the Plaintiff.

41.     Plaintiff is the owner of the unregistered trademark Mafietta and has used the mark for at least six (6) years.

42.     Defendants' unlawfully used the trademark Mafietta in the marketing, distribution and promotion of the film Mafietta without Plaintiff's consent.

43.     Defendants is infringed on the mark the Plaintiff and harming Plaintiff in its

business.

WHEREFORE, The Plaintiffs demand a jury trial and the following:

1.      Judgment on all counts and amount to be determined by the Court;
2.      Interest;
3.      An Injunction;
4.      Attorney fees; and,
5.      Any other relief this Court deems just and equitable.


                                        EDWYNA W. BROOKS D/B/A
                                        EW BROOKS BROOKS LLC
                                        By Its Attorneys,


                                        Christopher Brown
                                        CB3465
                                        Brown & Rosen LLC
                                        Attorneys At Law
                                        100 State Street, Suite 900
                                        Boston, MA 02109
                                        617-728-9111 (T)
Dated: February 28, 2019                cbrown@brownrosen.com

# EXHIBIT A

Labeled View

*Mafietta.*

**Relevance:** ▌

**Type of Work:** Text

**Registration Number / Date:** TX0007931981 / 2014-03-05

**Application Title:** *Mafietta.*

**Title:** *Mafietta.*

**Description:** Electronic Deposit.

**Copyright Claimant:** Edwyna Williams Brooks, 1979- . Address: 3193 Ft. Campbell Blvd., Apt 334, Clarksville, TN, 37042, United States.

**Date of Creation:** 2013

**Date of Publication:** 2013-03-01

**Nation of First Publication:** United States

**Authorship on Application:** E.W. Brooks, pseud. of Edwyna Williams Brooks, 1979- (author of pseudonymous work); Citizenship: United States. Authorship: text.

**ISBN:** 978-1484148655

**Names:** Brooks, Edwyna Williams, 1979-
Brooks, E.W., pseud., 1979-

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

TX 7-931-981

**Effective date of
registration:**

March 5, 2014

**Title**

**Title of Work:** Mafietta

**Completion/Publication**

**Year of Completion:** 2013

**Date of 1st Publication:** March 1, 2013          **Nation of 1st Publication:** United States

**International Standard Number:** ISBN          978-1484148655

**Author**

■          **Author:** Edwyna Williams Brooks

**Pseudonym:** E.W. Brooks

**Author Created:** text

**Citizen of:** United States

**Year Born:** 1979

**Pseudonymous:** Yes

**Copyright claimant**

**Copyright Claimant:** Edwyna Williams Brooks

3193 Ft. Campbell Blvd., Apt 334, Clarksville, TN, 37042, United Stat

**Certification**

**Name:** Edwyna W. Brooks

**Date:** March 5, 2014

# EXHIBIT B

From: **Rush, G. Edwin** <rush@rushthelawyer.com>
Date: Tue, Oct 4, 2016 at 8:03 PM
Subject: MAFIETTA
To: Eric Howard <Ehoward.law@gmail.com>


Hello Eric,

Enclosed please find both clean and marked up versions of Mr. Dash's agreement with Mrs. Brooks. Please have him sign four original copies and return to me at the below address.

For peace of mind, feel free to also send me an an electronic copy which I can have Mrs. Brooks countersign while we pass the originals to one another. As she has not had a chance to review this message, I reserve her right to make changes until the contract has been fully executed.


Very truly yours,

G. Edwin Rush

_____
G. Edwin Rush II, Esq.
Rush Law and Consulting, APC | 333 S. Grand Ave., Suite 450 | Los Angeles, CA 90071
(213) 232-1620 (o) | (213) 260-2310
(f) | Rush@rushthelawyer.com | www.RushTheLawyer.com
*"Legal Services...for a better tomorrow."*
PRIVILEGED COMMUNICATIONS
E-mails sent by Rush Law and Consulting, APC are intended only for the use of the individual or entity to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, it is hereby notified that any dissemination, distribution or copying of the communication is strictly prohibited. If you receive a communication in error, please notify the sender of the communication immediately.


**MAFIETTA MOTION PICTURE DIRECTOR'S AGREEMENT**
EW BROOKS BOOKS LLC

AGREEMENT made this ~~8th~~ 4th day of ~~April~~October, 2016, by and between EW BROOKS BOOKS LLC its successors, licensees and assigns, whose address is P.O. Box 1083 Oak Grove, Kentucky, KY 42262 ("Producer"), and POPPINGTON LLC dba DAMON DASH, whose address is

_____ ("Director") (collectively "the Parties").

WITNESSETH:

WHEREAS, Producer intends to produce a motion picture currently entitled Mafietta (the "Film") and desires to engage Director to direct same and actively participate in the marketing and selling the Film to potential distributors, and;

WHEREAS, Director desires to accept said engagement;

NOW, THEREFORE, in consideration of the mutual covenants and conditions set forth hereinafter, the parties hereto agree as follows:

1. Engagement

Producer hereby engages Director as the director of the Film, to perform all the services and functions customarily performed by a director of a motion picture, including, but not limited to, participating in the process of rewriting the screenplay, consulting with the Producer on casting and selection of creative personnel, and all areas of planning, production, and postproduction. It is hereby agreed that Producer will have final script approval of the screenplay for the Film.

2. Schedule

Director will make himself available for work on the Film according to the following schedule:

2.1 Script Preparation. Director will make himself available commencing on the date of this agreement or at any time mutually agreed to by the Parties in person and thereafter either in person, if available, or by way of telephone or digital transmission at reasonable times to discuss revisions of the screenplay with the screenplay writer, or such other writers as may be engaged to rewrite the screenplay, and continuing until such time as a revised screenplay satisfactory to Director is delivered.

2.2 Scheduling the Production. The Parties acknowledge that preproduction began prior to the date of this agreement. Production will commence no later than August 3, 2015 followed immediately by postproduction. Director will advise Producer of all engagements offered to him that might conflict with any preproduction, production, or postproduction. Director will be free to accept such offers until such time as he has been notified of the exact production date.

2.3 Preproduction. Preproduction will run for a time mutually agreed by the Parties. During such time, Director will make himself available on a nonexclusive basis to consult with Producer by telephone and mail on all creative aspects of the production.

2.4 Production. Principal photography will commence immediately following the preproduction period and will include a one (1) week shooting schedule with a one (1) week

- 1 -

contingency period available at the end thereof. Director agrees to comply will all reasonable requests and do all things necessary to assure completion of the Film on time and within the budget.

2.5 Postproduction an**d *Director's Cut.*** Commencing not later than one (1) week after completion of principal photography and continuing for a period of not more than eight (8) weeks, Director agrees to devote himself exclusively to the preparation of a fully edited Director's cut of the Film running not less than forty-two (42) minutes in duration. Thereafter, and subject to the terms of Producer's agreement with a motion picture distributor (the "Distributor"), Director agrees to make himself available for up to two (2) additional cuts and two

(2)     previews but all under Distributor's control if such control is provided for in Producer's agreement with Distributor.

2.6 Press Openings. Director agrees to make himself available, subject to bona-fide unavailability due to other commitments, to attend key openings, for press and other purposes, in London, New York, Charlotte, Los Angeles, Atlanta, or other such important venues as Producer may request. All expenses for such appearances will be paid by Director.

3.   Work Made for Hire

Director's performance hereunder, including all suggestions, ideas, or screen business contributed to the screenplay or to the Film as made will be as an employee for hire, with the resulting film to be deemed a work made for hire as defined in the United States Copyright Act, and Producer, or its designee, will be deemed the sole author thereof. Moreover, Director waives any so-called author's rights or droit moral that may accrue under any law throughout the world based on or deriving from his contributions to the Film.

4.   Compensation

In consideration of Director's services to be rendered as set forth herein, Producer agrees to pay Director the following sums.

4.1 ***Director's Fee.*** Director is to receive a fee of equivalent to one dollar ($1.00) ("Director's fee").

4.2 Additional Compensation. Producer agrees to pay Director as additional compensation hereunder a percentage of Net Proceeds, as defined in the financing agreement between Producer and its investors, equal to fifty percent (50%) of one hundred percent (100%) of said Net Proceeds ("Additional Compensation"). Payment of said Additional Compensation is to be made on the same terms and

paid at the same times as payment is made to the investors, along with copies of statements as issued to the investors.

It is acknowledged that the Film is based on the book "Mafietta," written by Edwyna W. Brooks. Notwithstanding the above-mentioned Net Proceeds, at no time shall Director receive, or Producer be obligated to pay and proceeds from merchandise which does not directly refer to the Film (e.g. if the merchandise only refers to the title Mafietta or uses phrases or characters originally portrayed in the book from which the Film is derived). References to characters, scenes, venues, and photography, as portrayed in the Film or the Film packaging, will be considered Merchandise and subject to division of the Net Proceeds, except in the instance where such references are made on book covers of subsequent publications of the aforementioned literary work, Mafietta or literary derivatives of the book.

Subject to a reasonable review by Director of expenditures made by Producer and other financiers in the production of the Film, such expenditures shall be deducted prior to any division and distribution of the Net Proceeds to Director. For the avoidance of doubt, Producer and its investors of the Film will be repaid their individual investments (i.e. expenses) before the fifty percent (50%) split of the Net Proceeds will take effect. The current investment into the film, as agreed to between Producer and Director is FORTY THREE THOUSAND THREE HUNDRED SEVENTY TWO DOLLARS AND EIGHTY FOUR CENTS ($43,372.84) per the attached schedule, hereby incorporated as Exhibit A.

~~Director shall be compensated from the Net Proceeds, not the gross. Such expenditures are currently estimated to be approximately EIGHTY FIVE THOUSAND DOLLARS ($85,000.).~~

Producer is under no obligation to invest any additional funds in the Film, including for any "pick-up" scenes.

All proceeds from the distribution and exploitation of the Film are to be paid directly to Producer prior to any division of funds.

Producer shall provide Director an accounting of all proceeds paid for the production of the Film.

4.3 Tax and Transfer Restrictions. All compensation hereunder may be subject to tax withholding and/or other restrictions issued by appropriate governmental authorities. Producer agrees to cooperate with Director in complying with all such restrictions.

4.4 Books and Records. Producer agrees to maintain adequate books and records and to afford Director or a certified public accountant of her/his designation and at his sole cost and expense, access to said books at Producer's offices during normal business hours for the purposes of review and auditing. Said right to review and/or audit will not be exercised more frequently than once in any twelve (12) month period.

5.   Credit

Provided that Director has fully performed hereunder, Producer agrees to accord Director credit as follows:

6.1 *"Directed by."* On a separate card at the end of the front credit roll and in all advertising except Excluded Ads. Producer agrees to afford Director credit as director in

one hundred (100%) percent-size type of any other person receiving credit and not less than twenty-five percent (25%) of the size of the largest letter of the title.

6.2 Publicity. Producer is hereby granted the perpetual right to use and authorize others to use Director's name, voice, likeness, and picture for advertising and publicity purposes in connection with the Film and for use on the covers of or in any inserts in any novelization based on the motion picture or the literary material derived thereof, and also for use on the covers or wrappers of any sound track-phonograph albums, discs or tapes, videodiscs videocassette or DVD packaging containing any part or all of the motion picture score or the Film itself and also for use in theater or souvenir programs for the Film. Moreover, Producer agrees to afford Director credit wherever and whenever others associated with the Film receive credit on all covers, packaging, and inserts as identified heretofore. Casual or inadvertent failure to afford credit in advertising or publicity will not be deemed a breach, provided that same is promptly and prospectively corrected on written notice.

- 3 -

6.3 ***Producer'***s Credit. In the event Director is in control of the credit roll in the Film, trailers, and advertising, Director shall include main title credits to Producer at the same size and font as Director, and not less than twenty-five percent (25%) of the size of the largest letter of the title as follows: (1) Based upon the book series Mafietta created by E.W. Brooks; (2) "Story by" E.W. Brooks; and (3) Executive Produced by E.W. Brooks. Each credit listed above shall receive a single card each. Any YouTube or social media posts/mentions under Director's control displaying video of the Film or trailer of the Film shall also include fixed credits in conformity with the above.

7.   Warranties, Representations and Indemnity

7.1 Warranties and Representations. Director hereby warrants and represents that he has the absolute right to enter into this agreement and will not hereafter enter into an agreement in derogation hereof; that he will perform his services in a craftsmanlike manner; and that his contributions to the Film will not infringe on the right, title, or interest of any person, firm, or corporation.

7.2 Indemnity. Director further warrants and agrees that he will hold Producer and Producer's successors, licensees, and assigns harmless from all liability, loss, costs, and expenses (including reasonable attorney's fees) that it or they may suffer by reason of the breach or alleged breach of any of the terms and warranties contained herein. If any claim or action is made or brought alleging facts that, if true, would constitute a breach of any of Director's representations and warranties or agreements hereunder, Producer will give Director prompt written notice thereof and may, at Director's expense, be represented by counsel retained by Producer or, at its option, by Director. Producer may set off against any moneys payable to Director by it, whether under this agreement or otherwise, the amount of any liability of Director to it under this paragraph. In addition, pending the final determination of such liability, Producer may withhold from any moneys payable

to Director, under this agreement or otherwise, such amount as it may deem necessary to cover its potential liability on account of such claim or action. Producer may compromise or settle such claim on such terms as Producer may deem reasonable, unless Director will furnish it with a surety bond in an amount and by a surety satisfactory to Producer for the payment to it of such potential liability.

8.   Union Affiliation

It is agreed and understood that Director is not a member of the Directors Guild of America, Inc. Director agrees to join the Directors Guild of America, Inc. at the direction of Producer in the event that Producer becomes a signatory with the Guild or produces the Film under the terms, of the Guild Agreement and agrees to remain in good standing throughout the term hereof.

9.   Further Agreements

9.1 Execution. Director hereby agrees to duly execute, acknowledge, and deliver to Producer or cause to be executed, acknowledged, and delivered to Producer, in a form approved by it, any and all further assignments, documents, or other instruments that Producer may deem necessary, expedient, or proper to carry out and effectuate the intent and purposes of this agreement.

9.2 Attorney-in-Fact. If Director fails to execute and deliver to Producer any further assignments or instruments required of Director under this agreement, then Director hereby appoints EW BROOKS BOOKS LLC to be his irrevocable attorney-in-fact, with the right, but not the obligation, to execute, acknowledge, and deliver any and all such further assignments and

other instruments in the name of and on behalf of Director, which appointment will be deemed to be a power coupled with an interest and will be irrevocable.

## 10.  No Obligation to Produce

Producer will have no obligation to produce or release the Film.

## 11.  Force Majeure

In the event that performance hereunder becomes impracticable as a result of an Act of God, accident, incapacity, fire, labor controversy, riot, war, civil commotion, acts of government, or other causes outside of the control of the parties thereto, Producer will have the right to suspend performance hereunder during the term of such conditions for up to, but not greater than, a period of six (6) months or, at its option, terminate Director's performance hereunder.

## 12.  Time and Budget

It is an essential condition of this agreement that the Film be completed on time and within the budget determined at the time of commencement of principal photography. Breach of this condition, or reasonably anticipated breach, as determined in Producer's sole discretion, will be grounds to terminate this agreement unless said failure to adhere to time and budget is not in any way Director's fault.

## 13.  Incomplete Performance

In the event that another director must be engaged to complete the Film, caused by Director's failure to perform hereunder based on illness, incapacity, or other causes or like or similar nature or on Director's failure to adhere to the production schedule and budget, then Director will receive a pro-rata share of the Director's fee and additional compensation as the amount of work that Director has performed relates to the total production work required for the Film. Billing credit will be accorded to that director who is substantially responsible for directing the Film.

## 14.  Miscellaneous

14.1     Assignment. Producer may transfer or assign this agreement or all or any part of its rights hereunder to any person, firm, or corporation, and this agreement will inure to its benefit and to the benefit of its successors, assigns, and licensees.

14.2     Notices.

14.2.1  All notices or payments that Producer may be required or may desire to give to Director hereunder may be delivered to Director personally or sent to her/him by prepaid certified mail or telegraph at the address indicated on page 1 hereof or such other address or addresses as Director may from time to time designate.

14.2.2   Any notices that Director may be required or may desire to give to Producer may be delivered personally to Producer or sent to her by certified mail or overnight commercial delivery service generating written confirmation of delivery at the address set forth on page 1 hereof, or at such other address or addresses as Producer may from time to time designate, with a copy to Rush Law and Consulting, APC, ~~816 S. Broadway~~333 S. Grand Ave., Suite 450, Los Angeles, CA ~~90014~~90071.

14.2.3   The date of mailing or overnight delivery, as the case may be, of any notice or payment hereunder, will be deemed the date of service of such notice or making of such payment.

14.3     Postproduction. Director will have the right to consult with Producer during postproduction of the motion picture, and Director will be available for consultation, but Producer will have the right to make all final decisions with respect to editing and postproduction work, release, and exploitation of the motion picture.

14.4     No Injunctions. In no event will Director be entitled to enjoin or otherwise interfere with the production, distribution, or exploitation of the Film or other property right based thereon or to terminate this agreement or any rights granted hereunder. Director's sole remedy in the event of any breach of this agreement will be an action at law for money damages only.

14.5     Successors and Assigns. This agreement, and all rights and obligations hereunder, will be binding on, and inure to the benefit of, the parties hereto and their respective heirs, executors, administrators, personal representatives, successors, licensees, and assigns. It is agreed that Director will not assign his performance hereunder, which is personal to her/him, and any attempted assignment will be deemed null and void.

14.6     Heading. The headings hereof are for convenience only and will not be deemed to modify or alter the terms hereof in any way.

14.7     Waiver. No waiver, whether it be expressed or implied, of any breach of any term or condition hereof will be construed as a continuing waiver or consent to any subsequent breach.

14.8     Arbitration. All disputes hereunder will be resolved before one (I) arbitrator of our mutual selection in the City of New York under the rules and regulations of the Directors Guild of America, Inc. as would apply under a Directors Guild of America Agreement. Any award or judgment based thereon may be entered and confirmed in any court of competent jurisdiction.

14.9     Labor Permits. Producer agrees to apply for and obtain all necessary labor permits at its sole cost and expense. Director will cooperate at all times and supply all information and references as may be required to obtain said labor permits.

14.10    Governing Law. This Agreement will be governed, construed and enforced in accordance with the laws of the State of New York applicable to

agreements executed and to be wholly performed therein. Artist expressly submits to the exclusive jurisdiction of all federal and state courts in the State of North Carolina. Artist consents that they may be served within or without such court's jurisdiction by registered mail or by personal service, provided a reasonably time for appearance is allowed. Artist waives any claims that such courts are an inconvenient forum. Artist also expressly submits to the sole jurisdiction of the State of North Carolina, County of Stanly, for arbitration, mediation, or alternative dispute resolution proceedings.

14.11    Entire Agreement. This agreement and any exhibits attached hereto constitute the final, binding, and entire agreement between the parties hereto and supersedes any and all prior written or oral agreements between the parties relating to the subject matter hereof. It cannot be modified or amended except by a written instrument signed by the parties hereto.

\\
\\
\\
\\
\\
\\
\\
\\

IN WITNESS WHEREOF, the parties hereto on the date first herein set forth have set their hand.

Producer: EW BROOKS BOOKS LLC


By: _____
      Edwyna Brooks

Its: Owner

Director:  POPPINGTON LLC


By: _____
      Damon Dash


Its: _____
      (Title)

# EXHIBT C



← **Video**



**damedashstudios**



**664 views**

**damedashstudios** @murdamookez 🙌#mafietta #Mafietta1st7min

View all 3 comments

FEBRUARY 2, 2017



# Video

 **damedashstudios**



0:58

     

**559 views**
**damedashstudios** @murdamookez
#Mafietta1st7min #Mafietta
View all 3 comments
FEBRUARY 4, 2017



← **Video**

 **damedashstudios**



 

**1,243 views** · Liked by **ewbrooksbooks**
**damedashstudios** **@iamsodeelishis** taking care
of business
**#Mafietta1st7min**
**#Mafietta**
View all 7 comments
FEBRUARY 14, 2017



← **Video**

 **damedashstudios** ⋮



0:57

**945 views**
**damedashstudios** Do you think
**@iamsodeelishis** can run an empire like this?
**@murdamookez**
**#mafietta**
**#mafietta1st7min**
View all 2 comments
FEBRUARY 24, 2017



Video

 damedashstudios



763 views

damedashstudios @murdamookez #Mafietta1st7min #Mafietta

View 1 comment

FEBRUARY 8, 2017



← **Video**

 **damedashstudios**



                                      

**618 views**
**damedashstudios** @murdamookez
#Mafietta1st7min #Mafietta
View all 3 comments
FEBRUARY 10, 2017



← **Video**



**damedashstudios**   ⋮





**1,199 views**

**damedashstudios** **@murdamookez** &
**@iamsodeelishis** know the game is rough but
still manager to take care of their ppl
**#Mafietta**
**#mafietta1st7min**

View all 7 comments

FEBRUARY 23, 2017



← Video



damedashstudios                                 ⋮



                                  

**1,326 views**

**damedashstudios** "Just remember, the fire is in the kitchen draw" **@murdamookez**
**#mafietta**
**#mafietta1st7min**

View all 4 comments

FEBRUARY 28, 2017



← **Video**


**damedashstudios**   ⋮



0:54

 

**1,483 views**
**damedashstudios** **@murdamookez** is asking
**@iamsodeelishis** for advice now!
**#mafietta**

View all 3 comments

MARCH 8, 2017



 duskopoppington





**12,111 views**

**duskopoppington** Scene from **#mafietta** starring **@iamsodeelishis** and **@murdamookez** .... directed by me **@kingcoleone_** and **@saudi_audi_** are in this brutal scene see full episode at **@damondashstudios** ...**#damedashstudios**.com **#staytuned** ... original content daily

View all 16 comments



← **Video**

 **damedashstudios**



**813 views**

**damedashstudios** "Once they got you, they got you"– @murdamookez @iamsodeelishis #mafietta

View all 3 comments

MARCH 9, 2017



← Video

 **damedashstudios**   ⋮



                          

**1,372 views**

**damedashstudios** Is **@iamsodeelishis** ready to hold it down while **@murdamookez** is away? **#mafietta**

View all 4 comments

MARCH 11, 2017



← **Video**

 **duskopoppington**                    ⋮



0:52

                      

**12,043 views**

**duskopoppington** Check out **@iamsodeelishis** and **@murdamookez** in **#mafietta** directed by me on **#damedashstudios @damondashstudios #staytuned #gangsterronnieromance**

View all 26 comments

MARCH 9, 2017

# EXHIBIT D



Photo


damedashstudios



Liked by **ewbrooksbooks** and **90 others**
**damedashstudios** Now streaming...
View all 5 comments







# EXHIBIT E

From: **App Store Notices** <AppStoreNotices@apple.com>
Date: Tue, Feb 27, 2018 at 6:18 PM
Subject: Apple Inc. (our ref# APP90457)
To: <ewbrooksbooks@gmail.com>, <nick@groundwurk.com>


Dear Edwyna and Sir or Madam,

**Please include APP90457 in the subject line of any future correspondence on this matter.**

Thank you for your email addressing the app below.  We consider the matter resolved.

Developer: Nicholas Stokes
Provider: Nicholas Stokes|25077235786
Title: Dame Dash Studios
Apple ID: 1179470119
-

If at any time you wish to reopen the matter regarding this app, please send us an email with your reference number (APP90457) in the subject line.

Sincerely,

James

 iTunes Legal  Apple  One Apple Park Way Cupertino, CA 95014  AppStoreNotices@apple.com
The information in this e-mail and any attachment(s) is intended solely for the personal and confidential use of the designated recipients.  This message may be an attorney-client communication protected by privilege.  If you are not the intended recipient, you may not review, use, copy, forward, or otherwise disseminate this message.  Please notify us of the transmission error by reply e-mail and delete all copies of the message and any attachment(s) from your systems.  The use of the sender's name in this message is not intended as an electronic signature under any applicable law.  Thank you.

>
> ----- Original Message -----
> From: ewbrooksbooks@gmail.com

> Subject: Re: Apple Inc. (our ref# APP90457) Notice of Complaint
> Date: Feb 1, 2018 at 5:38 PM
> To: nick@groundwurk.com
> Cc: AppStoreNotices@apple.com
>
>
> Thank you and only the best to you.
>
> -EW
>
> On Thu, Feb 1, 2018 at 7:12 PM, Nicholas Stokes <nick@groundwurk.com> wrote:
>
> > I removed it the same day so last week.
> >
> >
> > On Thu, Feb 1, 2018 at 4:10 PM EW Brooks <ewbrooksbooks@gmail.com> wrote:
> >
> >> All,
> >>
> >> That information is not correct. Mafietta was produced and totally
> >> financed by ME. Poppington has no ownership of this copyrighted and
> >> registered title.Thank you for informing DDS of your decision to remove
> >> this project. I appreciate your professionalism. Please advise of the
> >> removal date.
> >>
> >> Best,
> >>
> >> EW Brooks
> >>
> >> On Thu, Jan 25, 2018 at 9:06 PM, Nicholas Stokes <nick@groundwurk.com>
> >> wrote:
> >>
> >>> To Whom it May Concern:
> >>>
> >>> I am just the platform publisher and manager for Dame Dash Studios
> >>> (DDS).  I do not own the app or receive any subscription revenues from
> >>> members who sign up. I just spoke to the team that DDS team informing them
> >>> of 2 things. First, that I received this notice and secondly, that I would
> >>> be removing this title from this app per this complaint.
> >>>
> >>> It is my understanding that the Dame Dash Studios team has full
> >>> copyright to this title and that it was produced by Poppington Inc, the
> >>> company that we manage this app for.
> >>>

> >>> Please let me know if you have any questions.  Thanks.
> >>>
> >>> Nicholas Stokes
> >>> Partner / CTO
> >>> Groundwork Media Group
> >>> 310-738-1454 <(310)%20738-1454>
> >>> email: nick@groundwurk.com
> >>> web: http://groundwurk.com/
> >>>
> >>> On Jan 25, 2018, at 5:14 PM, App Disputes <AppStoreNotices@apple.com>
> >>> wrote:
> >>>
> >>> Dear Sir or Madam,
> >>>
> >>> **Please include APP90457 in the subject line of any future
> >>> correspondence on this matter.**
> >>>
> >>> On 12/29/2017, we received a notice from E. W. Brooks ("Complainant")
> >>> that Complainant believes the app listed below infringes its intellectual
> >>> property rights.  In particular, Complainant believes you are infringing
> >>> its copyright.  Please see their comments below.
> >>>
> >>> Developer: Nicholas Stokes
> >>> Provider: Nicholas Stokes|25077235786
> >>> App Title: Dame Dash Studios
> >>> Apple ID: 1179470119
> >>>
> >>> Comments from Complainant: This application has published my
> >>> intellectual property without permission. The short film Mafietta is not
> >>> authorized to be published on this platform. I am the owner and executive
> >>> producer of this piece. I would simply like it removed.
> >>> -
> >>>
> >>> You can reach Complainant through Edwyna Brooks (email:
> >>> ewbrooksbooks@gmail.com), copied on this email.  Please exchange
> >>> correspondence directly with Complainant.
> >>>
> >>> We look forward to receiving written assurance that your application
> >>> does not infringe Complainant's rights, or that the parties are taking
> >>> steps to promptly resolve the matter.  Please keep us apprised of your
> >>> progress.
> >>>
> >>> Please note that during the course of this matter:
> >>>

> >>> 1.  Correspondence to Apple must include the reference number noted
> >>> above in the subject line and copy the other party.  All correspondence
> >>> sent to Apple may be shared with the other party.
> >>>
> >>> 2.  Written assurance of rights may include confirmation that your
> >>> application does not infringe Complainant's rights, an express
> >>> authorization from Complainant, or other evidence acceptable to Apple, and
> >>> should include documentation wherever possible.
> >>>
> >>> 3.  Should you choose to remove your application (for example, while you
> >>> make any necessary changes), visit iTunes Connect at
> >>> http://itunesconnect.apple.com and access your app in the Manage Your
> >>> Application module.
> >>>
> >>> • Access your app in the "My Apps" module
> >>> • Click on the "Pricing and Availability" tab from the App Summary Page
> >>> and select "Edit" by "Availability"
> >>> • Select and deselect "All" territories to uncheck all App Store
> >>> territories
> >>> • Click on the "Done" button
> >>>
> >>> 4.  Developers with a history of allegations of repeat infringement, or
> >>> those who misrepresent facts to Apple and/or the Complainant are at risk of
> >>> termination from the Developer Program.
> >>>
> >>> 5.  Failure to respond to the Complainant or to take steps toward
> >>> resolving a dispute may lead to removal of the app(s) at issue as in
> >>> violation of the App Store Review Guidelines and/or the iOS Developer
> >>> Program License Agreement.  Please keep Apple apprised of your progress.
> >>>
> >>> Thank you for your immediate attention.
> >>>
> >>> Sincerely,
> >>>
> >>> Barry
> >>>
> >>> ☐ iTunes Legal | Apple | 1 Infinite Loop | Cupertino | CA | 95014
> >>>
<https://maps.google.com/?q=1+Infinite+Loop+%7C+Cupertino+%7C+CA+%7C+95014&entry=gmail&source=g>
> >>> | | mailto:AppStoreNotices@apple.com <AppStoreNotices@apple.com>
> >>> The information in this e-mail and any attachment(s) is intended solely
> >>> for the personal and confidential use of the designated recipients.  This
> >>> message may be an attorney-client communication protected by privilege.  If

> >>> you are not the intended recipient, you may not review, use, copy, forward,
> >>> or otherwise disseminate this message.  Please notify us of the
> >>> transmission error by reply e-mail and delete all copies of the message and
> >>> any attachment(s) from your systems.  The use of the sender's name in this
> >>> message is not intended as an electronic signature under any applicable
> >>> law.  Thank you.
> >>>
> >>>


--
**E.W. Brooks**
**Owner & Author**
**E.W. Brooks Books LLC**
[www.Mafietta.com](www.Mafietta.com)
**270.984.8079**

[Be Mafietta](Be Mafietta)
[Read Mafietta](Read Mafietta)
[Watch Mafietta](Watch Mafietta)


This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

# EXHIBIT F



# EXHIBIT G

https://www.imdb.com/title/tt5553260/?ref_=nm_flmg_act_1

## Mafietta: Rise of a Female Boss (2016)

17min | Short, Crime, Romance



Clarke drowns herself in her work to escape the reality of being single and lonely at thirty. Despite her best efforts, she cannot ignore her longing for love, adventure and power. Her best... See full summary »

**Director:**
Damon Dash

**Writer:**
E.W. Brooks

**Stars:**
Frank Coleone, Chandra Davis, Diallo Edmond | See full cast & crew »

View production, box office, & company info on IMDbPro ↗

Search for "Mafietta: Rise of a Female Boss" on Amazon.com

42

## Photos



Add Image

See all 5 photos »
Edit

# Cast

Credited cast:

| | | | |
|---|---|---|---|
| | Frank Coleone | ... | Mike |
| | Chandra Davis | ... | Clarke Williams |
| | Diallo Edmond | ... | Kat |
| | Saudia McCray | ... | Dee |
| | Murda Mook | ... | Errol Bellow |
| | Keon Taylor | ... | Detective (voice) |
| | Smith William | ... | Black |

See full cast »

View production, box office, & company info on IMDbPro ↗
Edit

# Storyline

Clarke drowns herself in her work to escape the reality of being single and lonely at thirty. Despite her best efforts, she cannot ignore her longing for love, adventure and power. Her best friend, Tracy Patton unknowingly answers her call when a mutual friend recounts her night of ecstasy with one of the richest men in town. Suddenly, Clarke is ready for her own dose of love and adventure and plots to get her own up and close glimpse of the flash and fame, but is she ready to become Mafietta?

43

Plot Summary | Add Synopsis

---

**Genres:**

Short | Crime | Romance

---

**Parents Guide:**

Add content advisory for parents »

Edit

# Details

**Official Sites:**

Official site

**Country:**

USA

**Language:**

English

---

# Company Credits

Show more on IMDbPro »

---

# Technical Specs

**Runtime:**

17 min

**Color:**

Color

See full technical specs »