UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
EDWYNA W. BROOKS D/B/A            )
EW BROOKS BOOKS LLC               )
   Plaintiff        ) Action No.
v.                                ) 19-cv-1944-JSR
                                  )
DAMON ANTHONY DASH and            )
POPPINGTON LLC d/b/a DAMON        )
DASH STUDIOS                      )
   Defendants       )
_____)

## JOINT PRE-TRIAL CONSENT ORDER

The parties submit this Joint Pre-Trial Order pursuant to the Trial Procedures of the

Honorable Judge Rakoff.

### PLAINTIFFS' WITNESSES

Plaintiffs intend to call the following witnesses:

 A. Damon Dash (for all Defendants) will testify that he has no written agreement with the Plaintiff associated with any services provided in 2015 for the film Mafietta. Mr. Dash will testify that he did not file a copyright for the film Mafietta and stipulated that Plaintiff is the owner of the Mafietta trademark. Damon Dash will testify that the Defendants did not pay for any expenses associated with the production of the film. Dash will testify that the defendants were due royalties of 50 percent in perpetuity.

 B. Edwyna Brooks: Mrs. Brooks will testify that she is the owner of the Mafietta franchise of books and is the Executive Producer and Co-Writer of the film Mafietta. She will testify as to all parties roles in the making of the film Mafietta and film and the facts of the Complaint including damages.

 C. Alvin Williams- Damages Expert will testify as the value of the film Mafietta had the defendant not engaged in copyright infringement and trademark infringement and value of the film. Mr. Williams report has been provided to the Defendants. Damages exceed $500,000.00.

 D. Tasha Francis-Line Producer of the film that reported to the Plaintiff. Ms. Francis will testify as to the events that occurred on set and relating to the production of the film Mafietta.

1

     E.     Attorney Edwin Rush-Will testify to his communications with Attorney Eric Howard in regards to Mafietta.

## DEFENDANTS WITNESSES

Defendants intend to call the following witnesses:

A. Damon Dash: Mr. Dash will testify to the following: his directorial filmography; the value associated with his directorial/production services; initial meeting with Ms. Brooks at the Poppington seminar; negotiations with Ms. Brook that underpin his allegations that he is the co-owner of the 17 minute film, which underlies the copyright at issue in the Plaintiff's infringement claim; that Ms. Brooks and him had a verbal agreement, which is what he relied on prior to directing, producing and co-authoring the film; that the film is a "joint work"; that, as a producer, he was able to secure the services of Deelishis - an identifiable female lead with a solid fan base - and Murda Mook –a male lead with a strong under-ground hip hop fans base that could draw from their respective fan bases; that Dash paid for some of the film's production; that he was authorized to distribute and market the 17 minute film with the Mafietta mark by Ms. Brooks; that Ms. Brooks placed the unregistered Mafietta mark on the film, which he was authorized to distribute and market to his network and industry contacts; that he was expecting to be compensated through royalties from distribution (which he was tasked with potentially obtaining) though he did not receive any actual compensation for his directorial and production services; and that the streaming of the film yielded only nominal revenue, but did not otherwise impair the film Mafietta's opportunity to still be acquired short film or webseries.

B. Eric Howard: Mr. Howard will testify as to the negotiations he had with Ms. Brooks' counsel, which evidence that the 17 minute film, which underlies the copyright at issue in the Plaintiff's infringement claim was intended to be a "joint work" throughout the time that he was in correspondence with Ms. Brooks' counsel.

C. Jonathan Ancrum a/k/a Murda Mook – Mr. Ancrum may be called as a witness to testify to his filmography, business and personal association with Mr. Dash, his on camera appearance fee, his role in the 17 minute film and Mr. Dash' contribution to the film.

## SUMMARY OF PLAINTIFFS' CLAIMS

     Plaintiff is the sole owner of the film Mafietta and Plaintiff is the creator of the Mafietta book series. Plaintiff hired a cast and crew to produce the film Mafietta in North Carolina in 2015. Defendant Dash was the director of the film. The parties negotiated for several months to reach a contract and finally ended their efforts in October 2016. Despite the parties failing to reach a

contract, Defendants in violation of Plaintiffs copyrights and trademarks, began to stream Plaintiffs film on youtube, Itunes and on the Damon Dash Studios app. The Damon Dash Studios app was a paid subscription app that charged monthly for $9.99 and yearly for $49.99 for access to the apps content. On the Defendants Instagram, over 53,000 views of the film occurred.  On plaintiff's youtube the trailer was viewed over 539,000 times. Defendant has not provided any documents to relating to the sales of the subscription based Damon Dash Studios app. Dash is in no way a joint owner or the joint author of the film Mafietta. Plaintiff also relies on the Amended Complaint filed in this action.  Plaintiff has been damaged in excess of $500,000.00.  This Court has granted Plaintiff's summary judgment on Counts II and Count III of the Amended Complaint. The trial will consist of plaintiff's prosecution of Count I, copyright infringement and damages.

## SUMMARY OF DEFENDANT'S POSITION

The film entitled Mafietta is a joint work as Mr. Dash made independent copyrightable contributions to the work and the parties fully intended to be co-authors. Accordingly, Dash intends on proving that he is a joint author of the work and, therefore, he cannot be liable for copyright infringement.

Defendants will also provide evidence, which supports a finding that Ms. Brooks chose the name of the film, consented to the use of her Mafietta unregistered mark on the film, and consented to the distribution of the film with said mark. Accordingly, the evidence will show that there should be no finding of willfulness or that this tis an exceptional case wherein attorney's fees should be awarded on either the copyright or trademark claims (assuming Plaintiff's prevail on the copyright claim).

**Exhibits**

## JOINT EXHIBIT LIST

## ALL EXHIBTS ARE ADMITTED BY STIPUALTION UNLESS OBJECTION IS NOTED

| Designation | Description | Objection |
|---|---|---|
| | **Plaintiff's Exhibits** | |
| P. Ex 1 | Plaintiff's Complaint | No |
| P. Ex 2 | Email from Brooks to Dash dated September 21, 2015 | No |
| P. Ex.3 | Email between Eric Howard and Edwin Rush dated July 2016 | No |
| P. Ex 4 | Email between Dash and Edwin Rush dated November 2015 and relating chain | No |
| P. Ex 5 | January 2016 email between Edwin Rush and Eric Howard relating chain re : moving forward | No |
| P. Ex 6 | Damon Dash Studios subscription fee  document | No |
| P. Ex 7 | Defendants Answer To Complaint | No |
| P. Ex 8 | Preliminary Injunction Brooks v. Dash 19-1944 | No |

| | | |
|---|---|---|
| P. Ex. 9 | Webber v. Dash Complaint 19-610 SDNY | **Yes- FRE 401 (Irrelevant)** |
| P. Ex 10 | Mafietta TV Youtube view of trailer for Mafietta 539,000 views | No |
| P. Ex 11 | Defendants social media views of Mafietta totaling 77,000 views | No |
| P. Ex 12 | Mafietta contracts and invoices for film cast/crew | No |
| P. Ex 13 | Mafietta Book Copyright | No |
| P. Ex 14 | Mafietta Film Copyright | No |
| P. Ex 15 | Email between Attorney Brown and Attorney Bhushan dated January 7, 2020 at 9:53 am re: preliminary injunction violation. | No |
| P. Ex 16 | CV/Resume and Report of Alvin Williams (Expert) | No |
| P. Ex 17 | Damon Dash Studios governing law and connection to Vimeo | **Yes- Authenticity/ Incomplete Exhibit** |
| P. Ex 18 | Defendants Financial Statement alleging 500k income dated September 2019 | **Yes- FRE 401 (Irrelevant)** |
| P. Ex 19 | July 26, 2015 email from Brooks to Dash re Final Version of Script | No |
| P. Ex 20 | July 31, 2015 emails between Attorney Rush and Dash containing director agreement | No |
| P. Ex 21 | August 4 2015 and August 5, 2015 email amongst the crew containing script rewrites | No |
| P. Ex 22 | Damon Dash Tax Article | **Yes- FRE 401 (Irrelevant)** |
| P. Ex 23 | Mafietta Invoice examples | No |
| P. Ex 24 | Brooks v. Dash 19-1944 NY Summary Judgment Order | No |
| P. Ex 25 | Draft October 2016 Contract between Brooks and Dash | No |
| P. Ex. 26 | Email communications from February 2016 –April 2016 between Eric Howard and Attorney Rush draft contract between the parties | No |
| | **Defendants' Exhibits** | |
| | | |

| Doc # | Electronic Title | Short Description | Object Y/N |
|---|---|---|---|
| **D1** | Complaint | Complaint; filed February 28, 2019 | No objection |
| **D2** | Answer | Defendant's Answer to Complaint May 6, 2019 | No objection |
| **D3** | Brooks Insta 1 | 7 second video ripped from Instagram | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship. |

4

| | | | |
|---|---|---|---|
| **D4** | Brooks Insta 1 | ewbrooksbooks Post dated October 10, 2016 w/ ripped vid | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D5** | Poppington Tweet 1 | Dusko Poppington Tweet dated 14 Mar 2017 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D6** | Facebook 1 | Mafietta Face Book post dated July 12, 2015 | No objection |
| **D7** | Poppington Tweet 2 | Dusko Poppington Tweet dated 22 Feb 2017 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D8** | Poppington Tweet 3 | Dusko Poppington Tweet dated 8 Oct 2016 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D9** | Brooks Tweet 1 | E.W. Brooks Books Tweet dated 10/04/2019 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D10** | Brooks Tweet 2 | E.W. Brooks Books Tweet dated 15/04/2019 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D11** | Dash Brooks Email MAFIETTA-DASH | From Rush, G. Edwin, email contains 'MAFIETTA MOTION PICTURE DIRECTOR'S AGREEMENT-DASH_11.1.16 (Green-Rush).docx', dated Mar 14, 2019 | No objection |
| **D12** | MAFIETTA MOTION PICTURE DIRECTOR'S AGREEMENT-DASH_11.1.16 (Green-Rush) | Received from Rush, G. Edwin email. | No objection |
| **D13** | Dash Brooks Email Mafietta | Email from EW Brooks To Damon Dash dated June 3, 2019 | No objection |
| **D14** | Dash Brooks Email Dusko Blu Mafietta | Email from EW Brooks To Damon Dash dated Jun 3, 2019<br>Email contains 'DuskoMaf_001.mp4' | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship. |
| **D15** | DuskoMaf_001 | 13 second video from EW Brooks Email | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D16** | Dash Brooks Email THE HBO SHORT FILM COMPETITION IS NOW | Email from EW Brooks To Damon Dash dated Jun 3, 2019 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |

|  | | | |
|---|---|---|---|
|  | ACCEPTING SUBMISSIONS | | |
| **D17** | Dash Brooks Email Subject Re THOUGHTS | Email from EW Brooks To Damon Dash dated June 3, 2019 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D18** | Dash Brooks Email Mafietta (planning) | Email from Dash to Eric Howard dated Jul 14, 2016 | No objection |
| **D19** | Gossip Viv talks Damon Dash, Deelishis & Mafietta | Screenshot of website 'mafietta.com/Mafietta-tv' ripped 6/3/2019 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D20** | Damon Dash Talks Poppington Academy and Working with NC Author EW Brooks | Video ripped from Mafietta tv website | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D21** | DuskoMaf_001 | Video ripped from Mafietta tv website | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D22** | Gossip Viv talks Damon Dash Deelishis Mafietta | Video ripped from Mafietta tv website Video posted to youtube Apr 7, 2016 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship. Lacks foundation, authenticity and completeness |
| **D23** | E.W. Brooks Goodreads Author | Article ripped 6/3/2019, https://www.goodreads.com/author/show/7128423.E_W_Brooks | No objection |
| **D24** | Damon Dash Accused Of Hijacking Another Film After On-Set Behavior Issues - AllHipHop.com | Article ripped 6/3/2019, https://allhiphop.com/news/damon-dash-accused-of-hijacking-another-film-after-on-set-behavior-issues-tHIj3zU8fUyiRDfZaA54NQ | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D25** | hiphopwired.com802459dame-dash-hit-with-lawsuit-over-mob-film-mafietta | Article ripped 6/3/2019, https://hiphopwired.com/802459/dame-dash-hit-with-lawsuit-over-mob-film-mafietta/ | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| **D26** | huffpost.com entrybehind-the- | Article ripped 6/3/2019, | No objection |

| | scenes-with-ew_b_9366152 | https://www.huffpost.com/entry/behind-the-scenes-wit | |
|---|---|---|---|
| D27 | theblast.comdamon-dash-lawsuit-author-mafietta | Article ripped 6/3/2019, https://theblast.com/damon-dash-lawsuit-author-mafietta/ | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| D28 | changes for else's flight Changes have been made to your 8 1 2015 flight | Email from EW Brooks To Damon Dash dated Jul 18, 2019 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| D29 | Domestic Stuff by JUS K | Email from EW Brooks To Damon Dash dated Jul 18, 2019 | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship |
| D30 | Mafietta Rough | Email from EW Brooks To Damon Dash dated Jul 18, 2019 | No objection |
| D31 | Dame Dash, Murda Mook and Deelishis - All Smiles on Mafietta Set | Mafietta TV -24 second Video ripped from youtube https://www.youtube.com/watch?v=mTjhc8zWzAI | Immaterial and irrelevant to the issues of copyright infringement and mutual intent of authorship. Lacks completeness |
| D32 | Adshare Summary Mafietta | Adshare Summary of Revenue, Q1 2017-M05 2019 | No objection |
| D33 | Damon_Dash_AdShare Summary_Q1_2017 | Q 1, 2017 Adshare Performance and Gross Revenue | No objection |
| D34 | Damon_Dash_AdShare Summary_Q2_2017 | Q 1, 2017 Adshare Performance and Gross Revenue | No objection |
| D35 | Damon_Dash_AdShare Summary_Q3_2017 | Q3_2017 Adshare Performance and Gross Revenue | No objection |
| D36 | Damon_Dash_AdShare Summary_Q4_2017 | Q 4, 2017 Adshare Performance and Gross Revenue | No objection |
| D37 | Damon_Dash_AdShare Summary_Q1_2018 | Q 1, 2018 Adshare Performance and Gross Revenue | No objection |
| D38 | Damon_Dash_AdShare | Q 2, 2018 Adshare Performance and Gross Revenue | No objection |

7

| | | | |
|---|---|---|---|
| | Summary_Q2_2018 | | |
| **D39** | Damon_Dash_AdShare Summary_Q3_2018 | Q 3, 2018 Adshare Performance and Gross Revenue | No objection |
| **D40** | Damon_Dash_AdShare Summary_Q4_2018 | Q 4, 2018 Adshare Performance and Gross Revenue | No objection |
| **D41** | Damon_Dash_AdShare Summary_01_2019 | M01 2019 Adshare Performance and Gross Revenue | No objection |
| **D42** | Damon_Dash_AdShare Summary_02_2019 | M02 2019 Adshare Performance and Gross Revenue | No objection |
| **D43** | Damon_Dash_AdShare Summary_03_2019 | M03 2019 Adshare Performance and Gross Revenue | No objection |
| **D40** | Damon_Dash_AdShare Summary_04_2019 | M04 2019 Adshare Performance and Gross Revenue | No objection |
| **D41** | Damon_Dash_AdShare Summary_05_2019 | M05 2019 Adshare Performance and Gross Revenue | No objection |

## STIPULATED FACTS

1. Jurisdiction is based on diversity of citizenship and federal question. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).

## PARTIES

2. Edwyna Brooks d/b/a EW Brooks Brooks LLC ("Brooks") is an author from North Carolina with a last address of 211 Livingston Street, Norwood, NC 28128 and

8

lived in Kentucky in 2015.  She is part of a military family that is presently stationed in South Korea.

3. Damon Anthony Dash ("Dash") is a California resident. Dash upon information and belief has financial interest in various companies that are active in New York State including Damon Dash Enterprises I LLC (NY DOS ID 3438772), Damon Dash Promotions LLC (NY DOS ID 3176673) and Damon Dash Music Group LLC (NY DOS ID 3396760).

4. Poppington LLC d/b/a Damon Dash Studios ("Poppington") was formed as a New York limited liability company, New York DOS ID 4527652.  Dash is the Chief Executive Officer of Poppington and Poppington has an address of 13547 Ventura Blvd, Ste 199, Sherman Oaks, CA 91423.

FACTS

5. Brooks is the author of "Mafietta" a four-part book series based on aspiring female crime boss. Brooks' goal when writing the book series was to have it turned into a film and/or television series. The books have been copyrighted. U.S. Copyright Registration Number TX-931-981. The books appear for sale at amazon.com.  https://www.amazon.com/Mafietta-Rise-Female-Boss/dp/0692410406.

6.  In 2015, Dash was in North Carolina. Brooks lived in North Carolina in 2015. Brooks attended the Poppington seminar that was being held at that time in North Carolina and paid the fifty-dollar ($50.00) fee to attend the seminar.

9

7.	Brooks attended the Poppington seminar at an old heating and air-conditioning building in mid-July 2015. Brooks informed the Defendants as to status of Mafietta. The Defendants were informed that Brooks had the funding and needed "mentorship and a co-sign" to get the product in the right hands. At the Poppington seminar, Dash informed Brooks that he would be willing to direct the film Mafietta

8.	On July 31, 2015, before production began, Attorney Rush provided Dash with a draft Director's Agreement, which was marked up by Attorney Howard. The contract contained a "work-for-hire" provision relating to the Defendants.

9.	The film began to shoot Mafietta on August 3, 2015. Dash performed directorial services.

10.	The film completed shooting on August 6, 2015.

11.	From July 2015 through September 2015, Brooks and Dash communicated about issues concerning the terms of their agreement.

12.	November 18, 2015, Brooks and Dash emails others indicating problems with Mafietta.

13.	Attorney G. Edwin Rush negotiated for Brooks and Attorney Eric Howard negotiated for Dash on the director's contract for Mafietta from November 2015 from through October 2016.

14.	November 18, 2015, Brooks and Dash emails others indicating problems with Mafietta.

15.	Attorney G. Edwin Rush negotiated for Brooks and Attorney Eric Howard negotiated for Dash in re contractual issues regarding the Mafietta film from November 2015 through October 2016. In 2016, the parties circulated a draft agreement which called for Dash to provide services on a "work for hire" basis. The parties never executed a contract.

16. In 2017, the Defendants placed the film Mafietta on Dame Dash Studios subscription-based platform and on iTunes.  Plaintiff subsequently reached out to iTunes and the video was removed.

17. Brooks promoted the Mafietta trailer on her Mafietta TV youtbue.

18. Defendant Dash promoted a trailer of the film that he directed on his social media which are reflected in summary reports compiled by the company AdShare GoDigital

19. Brooks registered the film with the United States Copyright Office Pau003956394 in January 2019.

20. On January 7, 2019, Defendants were informed promotion posts that appears on Defendants social media relating to Mafietta. Defendants removed the posts per the terms of the stipulated preliminary injunction order.

**Damages**

    **A.**     **Trademark Violation**

    1.     Lanham Trade-Mark Act; and
    2.     Federal Common Law of Trademark Infringement

An issue also relates to Plaintiffs' damages.

    Plaintiffs are seeking preliminary damages as follows pursuant to sections 1117 and 1125 of the US Code Title 15:

(a) Profits; damages and costs; attorney fees
When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125 (a) or (d) of this title, or a willful violation under section 1125 (c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover
(1) defendant's profits,
(2) any damages sustained by the plaintiff, and
(3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove

defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

<u>(b) Treble damages for use of counterfeit mark</u>

In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114 (1)(a) of this title or section 220506 of title 36 that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116 (d) of this title), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621 (a)(2) of title 26, commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate.

<u>(c) Statutory damages for use of counterfeit marks</u>

In a case involving the use of a counterfeit mark (as defined in section 1116 (d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—

**(1)** not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

**(2)** if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

<u>(d) Statutory damages for violation of section 1125 (d)(1)</u>

> In a case involving a violation of section 1125 (d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $1,000,000.

### B. Copyright Violation

Defendants without the consent or approval from Plaintiff, streamed Mafietta on I-tunes and Youtube and on defendants "Dame Dash Studios" media platform.

<u>Copyright Damages Section 504</u>
**(b)** Actual Damages and Profits.—
The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's

12

profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

**(c)** Statutory Damages.—

**(1)**
Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

**(2)**
In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in section 118(f)) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

Further, a plaintiff who can demonstrate that infringement was "willful" can recover up to $150,000 in statutory damages; an infringer that demonstrates he or she "was not aware and had no reason to believe that his or her acts constituted an infringement" can have the damages reduced to $200. "Willful," under the statute, means "with knowledge that the defendant's conduct constitutes copyright infringement." *Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 957 (9th Cir.2001)

Plaintiff is requesting in excess of $500,000.00 in damages plus legal fees and treble damages. Plaintiff is requesting statutory and/or actual damages associated with the U.S. Copyright Act and Lanham Act. The Court has granted Plaintiff's summary judgment on Count II and Count III of the Amended Complaint relating to the trademark claims. Plaintiff's damages for trademark and copyright infringement include the (1) cost of the film (2) future lost income due to

Defendant's unauthorized exploitation of the film (3) attorneys fee and costs (4) treble damages due to the defendants willfulness.

Plaintiff also seeks a permanent injunction enjoining the defendants from marketing, advertising distribution and selling of the film Mafietta.

<u>Particular list of damages for Plaintiff</u>

| | |
|---|---|
| $49,372.84 | Cost of film |
| $500,000.00 | lost future income |
| TBD | Legal fees |

treble damages

Plaintiff also seeks a permanent injunction enjoining the Defendants from marketing, advertising, promoting or distributing the film Mafietta.

<u>Defendants' relief</u>

Dismissal on the copyright infringement claim

No damages awarded on the trademark claim


The parties estimates that trial will be 2 days.


                                        EDWYNA W. BROOKS D/B/A
                                        EW BROOKS BOOKS LLC
                                        By Her Attorneys,

                                        _____
                                        Christopher L. Brown
                                        3465
                                        Brown & Rosen LLC
                                        Attorneys At Law
                                        100 State Street, Suite 900
                                        Boston, MA 02109
                                        617-728-9111 (T)

January 13, 2020                    cbrown@brownrosen.com

**TURTURRO LAW, P.C.**

By: /s/Natraj S. Bhushan, Esq

1602 McDonald Avenue
Brooklyn, NY 11230
Tel.: (718) 384-2323
*Attorneys for Defendants*